**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------- X
UNITED STATES OF AMERICA,          :
                                   :
       -v.-                        :          12 Cr. 823 (JFK)
                                   :          **OPINION & ORDER**
BRIAN PATTERSON,                   :
                                   :
                    Defendant.     :
--------------------------------- X

```
┌─────────────────────────────────────┐
│ USDC SDNY                            │
│ DOCUMENT                             │
│ ELECTRONICALLY FILED                 │
│ DOC #: _____                │
│ DATE FILED:Feb. 14, 2013             │
└─────────────────────────────────────┘
```

APPEARANCES

FOR UNITED STATES OF AMERICA
Preet Bharara
United States Attorney, Southern District of New York
Of Counsel:  Tatiana R. Martins

FOR DEFENDANT BRIAN PATTERSON
Jerrod Thompson-Hicks
Federal Defenders of New York, Inc.

**John F. Keenan, United States District Judge:**

       Before the Court is Defendant Brian Patterson's

("Patterson" or "Defendant") motion to suppress physical

evidence seized pursuant to a warrantless search of his home.

For the reasons that follow, the motion is denied without a

hearing.

**I. Background**

       In an indictment dated November 13, 2012, Defendant is

charged with being a felon in possession of a firearm, in

violation of 18 U.S.C. 922(g)(1).  At the time of his arrest,

Patterson was serving a five-year term of parole.  In 2004, He

pleaded guilty in Bronx County Supreme Court to criminal

possession of a weapon in the second degree, and was sentenced
to five years' imprisonment and five years of post-release
parole supervision.  His parole term began on October 22, 2010,
prior to which he was apprised of the conditions of his parole.
He signed a "Certificate of Release to Parole Supervision" which
included the stipulation that he would "permit the search and
inspection of [his] person, residence and property." (Gov. Ex.
A.)

In August 2012, Parole Officer Edgar Imafidon received
information from a confidential witness, who was familiar with
Patterson and his activities, that Patterson had been "showing
off . . . an AK-47." (Imafidon Decl. ¶ 6.)  Imafidion relayed
this information to Patterson's parole officer, who consulted
his supervisor and colleagues.  They decided to conduct a search
of Patterson's residence.  The conversations leading up to the
search of Patterson's residence, including the assessment of the
credibility of the threat, were memorialized in Patterson's
parole record. (Id. Ex. B.)

On August 27, 2012, members of the New York Department of
Corrections and Community Supervision ("DOCCS") executed a
search of Patterson's residence.  Investigators recovered a
loaded 7.62 mm caliber Norinco Rifle with a thirty-bullet
capacity stored inside a black nylon bag that was hidden
underneath a dresser in Patterson's bedroom.  The search team

also recovered a shoe box that contained, among other things, live rounds of ammunition for a .9 mm caliber firearm, along with photo identification belonging to Patterson.

## II. Discussion

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.  However, when an individual consents to a special condition of supervised release that authorizes warrantless searches, the Fourth Amendment analysis changes, such that courts need ask only whether "the conduct of the parole officer was rationally and reasonably related to the performance of the parole officer's duty." United States v. Newton, 369 F.3d 659, 665–66 (2d Cir. 2004) (citation omitted); see also U.S. v. Justiniano, 401 F. App'x 595, 596 (2d Cir. 2010) (relying upon Newton to uphold a warrantless search of a parolee who had consented to a term permitting parole officers to search his residence, person, and property at any time).

It is unclear whether the Court must find that the search of a parolee's home was based in reasonable suspicion or whether

some lesser standard will suffice. Compare U.S. v. Knights, 534

U.S. 112, 121 (2001) ("When an officer has reasonable suspicion

that a probationer subject to a search condition is engaged in

criminal activity, there is enough likelihood that criminal

conduct is occurring that an intrusion on the probationer's

significantly diminished privacy interests is reasonable.") and

Samson v. California, 547 U.S. 843, 852 (2006) (holding that a

suspicionless search of California parolee, conducted pursuant

to California law requiring all parolees to agree to be

subjected to search or seizure at any time, did not violate the

Fourth Amendment), U.S. v. Lifshitz, 369 F.3d 173, 180 (2d Cir.

2004) (suggesting that Knights may also support probationary

searches based upon "a lesser standard" than reasonable

suspicion).

The Court need not make the determination whether New York

state law would condone a standard less than reasonable

suspicion, as the Government here has demonstrated that the

search of Patterson's residence was commenced pursuant to

reasonable suspicion.  The DOCCS search team acted upon

information that Patterson had a gun, as provided by an

identified source who was familiar with the Defendant. (Imafidon

Decl. ¶ 6.)  Accordingly, the search team possessed articulable

facts suggesting that Defendant was engaged in wrongdoing. See

Griffin v. Wisconsin, 483 U.S. 868, 871 (1987) (upholding search

4

of probationer's residence based upon information from a police officer that probationer may have guns in residence); U.S. v. Barner, 666 F.3d 79, 85 (2d Cir. 2012) (parole officer had reasonable suspicion to execute warrantless search of parolee after receiving information that defendant may be harboring contraband).

Next, the Court finds that the search of Defendant's residence was "rationally and reasonably" related to the performance of the parole officer's duties.  In searching Defendant's residence, the probation officers were investigating a crime being committed by an individual on parole.  Identifying and preventing crime by parolees is a central duty of parole officers.  Id. at 85 ("[P]arole officers have a duty to investigate whether a parolee is violating the conditions of his parole.").  There is no question that the parole officers proceeded rationally upon receiving the credible tip that Patterson was in possession of a gun.

"A defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on his claim; rather, the defendant must first 'state sufficient facts which, if proven, would [require] the granting of the relief requested.'" United States v. Seijo, No. 02 Cr. 1415, 2003 WL 21035245, at *4 (S.D.N.Y. May 7, 2003) (quoting United States v. Kornblau, 586 F. Supp. 614, 621 (S.D.N.Y. 1984)).  The defendant

must show "that disputed issues of material fact exist before an evidentiary hearing is required." United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989) (citation omitted).  The defendant's allegations, moreover, must be "definite, specific, detailed, and nonconjectural." United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992) (internal quotations and citations omitted).  The Court finds that Defendant's submission is insufficient as a matter of law to establish that the warrantless search violated the Fourth Amendment.  As Defendant has failed to allege any relevant facts in support of his motion, there is no dispute necessitating a hearing.


**SO ORDERED.**

Dated:    New York, New York
          February 14, 2013

                              _____
                                   John F. Keenan
                              United States District Judge